Clerk, will you call the next case, please? 12-0252 Committee of the Ten for Petition to Detach from District 202 Appellants by Ryan Harrington v. Plainfield Community School District No. 202 Rafferty v. Physio Vasquez And Mr. Harrington? Good morning, Your Honors. Good morning. My name is Ryan Harrington, and I represent the appellant, the Committee of Ten. The Committee of Ten is made up of the residents of the Tamarack South subdivision located in far southwest Naperville in Will County, Illinois. The Committee of Ten filed a petition to detach its property from Plainfield School District 202 and to annex it into Naperville School District 204, pursuant to Section 7-6I of the School Code. Section 7-6I of the School Code requires the Regional Board of School Trustees to hear and consider evidence whether it is in the best interests of the schools of the area and the educational welfare of those pupils that such a change in the boundaries be granted. Petitions for detachment and annexation should be granted when the overall benefit to the annexed district and the detachment area clearly outweighs the resulting detriment to the losing district and the surrounding communities. In order to determine whether a change in boundaries is in the best interests of the students, the courts and the regional boards typically apply the benefit-detriment test. And in doing so, they apply the following factors. The differences between the school facilities and the curriculum, the distances from the petitioners' homes to the respective schools, the effect the detachment would have on the ability of either district to meet the state standards of recognition, the impact of the proposed boundary change on the tax revenues of both districts, and whether the detaching district would remain financially healthy and able to meet the standards of recognition. Mr. Harrington, just one question. You said in the best interests of the students. Is that the test? Best interests of the school area and the educational welfare of the pupils. So it's both. Now, there are some issues to bear in mind when this analysis is taking place. The petitioners, in this case the committee of 10, don't need to demonstrate any particular benefit to the annexing district as long as the overall benefit to the annexing district and the detached marrying considered together outweighs the resulting detriment to the losing district. In the absence of a substantial detriment, some benefit to the educational welfare of the students needs to be shown to warrant granting the petition. Importantly, the loss of revenue is not a determining factor in detaching proceedings, and alone should not prevent a boundary change if the district subject to detachment is not levying the maximum tax rate, in this case, Plainfield 202. And while the financial loss to a detaching district is not irrelevant, it can't serve as a denial to the base of a detachment unless it is serious. Now, in this case, the committee of 10 presented evidence on all these factors to the regional school board. They presented evidence, by the way, of testimony from the residents. Those residents testified how their lives really revolve around Naperville. They use Naperville Park districts, their churches, their work communities, except for the District 202 schools that they have to send their children to. They also presented evidence from the Board of Education regarding the scores of both District 204 and District 202, as well as the tax implications of detaching this neighborhood from District 202 into 204. Now, the regional board entered an order after the hearing and made some factual findings. The two most significant findings in this case are findings 2 and 3 of the board's March 29, 2011 order. Finding 2 was, on the question of whether either school district would suffer substantial detriment, the finding was 5-0 in favor. Now, I would say that a little differently, I guess. The board found that neither school district would suffer a substantial detriment, and that finding was made unanimous, 5-0, by the hearing officers. Finding 3 states, on the question of whether detachment and annexation is in the best interest of the children. Again, that was a 5-0 favor, yes. And again, said differently, the board found unanimously that detachment and annexation would be in the best interest of the children. Two unanimous decisions, after analyzing the factors set forth in the case law, found 5-0 that there would not be a detriment to District 202, and that it would be in the best interest of these children to be annexed into District 204. Inexplicably, then, the board then found that the petitioners hadn't presented sufficient evidence to grant the petition. And what this brings up is, it's not a standard, or it's not a factor, it's not an element, but the case law says it must clearly outweigh the detriment. It's the committee's position that that decision is against the manifest weight of the evidence, because when they analyzed every factor available to determine whether they should grant one of these petitions, and the regional board found, unanimously again, 5-0, that the committee did meet the standard and determined that it is in the best interest to detach and annex, and that neither school district would suffer a financial detriment, that there's no other standard they can meet. The problem that we run into with this is that there appears to be, or at least based on this decision, an unwritten, undefined, unknown standard that doesn't show up in the statute, that doesn't show up in the case law, that can still defeat a petition when the petitioners go in there and meet all of the written out, set forth standards. You said that these are the two most important of the five factors. Does the statute say that? Under the school code 7-6i, that requires that the regional board hear and consider evidence whether it's in the best interest of the schools in the area, and how that is done is by using the benefit detriment test. Those are the two findings that address that section. There was an additional, sorry, that addressed section 7-6i. There was an additional independent basis filed with the original petition to detach and annex, claiming that Tamarack South was not contiguous with District 202. That has not been raised here, but it is found within these findings, some of the findings four and five. They occurred after the 7-6 information was heard. So what we have is findings two and three address the 7-6i portion of the petition, and then findings four and five discuss the independent basis, the contiguity argument. It's not part of this. So when I say two and three address the package for this court, that's the only portions before this court is the 7-6 best interest portion of the petition. That's why I say those are the two findings that matter for what we're doing today. Okay. But the board voted on seven factors. The board made seven findings, correct. And they were not all unanimous, and they were not all in your favor. Correct. And finding six was 3-2 against us, and finding seven was 3-2 against us. But I'm saying that those findings, findings six and seven, are against the manifest weight of the evidence because they found 5-0. When analyzing all the factors, they found 5-0 that it was in the best interest of these children to detach from 202 and go to 204. And it was 5-0, again, unanimous, that neither district would suffer a detriment by detaching from 202 and going to 204. So it's our position to find that they didn't present sufficient evidence does not logically correlate with 5-0 findings that all the other factors are met. Okay. Which was the concern that we had with the... I just want to clarify just very quickly. The petitioners move forward really on two bases, the one being the contiguity and the other being best interest. And so that's those two counts, for lack of better term. That makes up the seven findings. And two and three, well, one deals with all of them. Two and three deals with best interest. Four and five deals with contiguity. And six and seven, again, deal with both. Is that how it works out? The petition had best interest. The petition also argued contiguity. You can do one or the other or bring both of them, as we did in this situation, but each is decided independently, or each on its own can stand and be sufficient to take granted. But what it appears happened is when they made the vote, the best interest vote, unanimously they said best interest to detach and annex. Then they looked at the depletion of the tax revenue to 202 and said, well, would it be a detriment to 202 or to 204 by doing this? And they again found unanimously no, it would not, which are the factors for a 7-6 petition. Then they go into the contiguity argument, and it appears from when they were making their decision that they kind of blended, that they proved both the best interest issue and contiguity when they reached their decision on finding six and seven because they didn't look at them independently as they should have. Because once they did the unanimous decision on the best interest, that's where they could have stopped. They didn't have to keep going with it. But unfortunately, then they combine it with the contiguity argument, which didn't go as well for us, and then they come up with these conclusions that it shouldn't be granted. Well, we can't tell. Was the detachment annexation denied because of contiguity? They can deny that and we can still grant the petition, and that's not what happened. It's just there's this nebulous issue of what's the overall benefit? Again, it's a standard that's not one to meet. I always think of an example of trying to change a zoning law. You go and look at the zoning statute and say, what elements do I need to meet to do that? And there's five elements to meet. And you go through the analysis and say, well, I can meet all five of those. It's almost unconstitutional to then say, well, there is a sixth element. It's not in the statute. It's not in the case law. It's whatever someone happens to decide on a given day on a subjective determination. And that makes this ruling against Manifest Way. They did everything they could. They showed everything they could, and the regional board agreed that they did everything they have to, except for the final vote where they said, no, we didn't. And those are logically inconsistent. And for that reason, the committee feels that this board, I apologize, that this court has to reverse, and it gets a little weird, you need to reverse and vacate the trial court's order, as well as reverse the regional board's order, and in fact enter an order finding that detachment and annexation is appropriate here, that the appellant should be detached from District 202 and annexed into 204. There's no issue in your mind about changing the vote a week later, that it went from 4-1 in favor to 3-2 against? That's what the transcript actually indicates, and the order is corrected that day. But that's not your argument. I think that was... No, no. You're taking that vote and just saying it was, what, against the Manifest Way to the evidence? Correct. Against the Manifest Way to their previous, not their previous decision, but their other decision. It's against the Manifest Way to their factual findings, right? See, at the hearing, you know, when a regional board makes its factual findings, they memorialize it in the order. And a reviewing court, whether it's at the trial level or up here, reviews the, or considers the factual findings of the administrative agency to be prima facie true and correct. And the administrative agency's factual findings are against the Manifest Way when they make the determination that the best interest was met, that there's no detriment to the detachment district. There isn't another standard, then, to say, well, we just don't want to. Or, you know, they did meet everything, but it doesn't quite work for us. It's not there. The factual findings, not the conclusion. The factual findings are all in our favor. The conclusion of denying it after those findings is against the Manifest Way. I understand that the regional board, you know, has seven members in the forum, all those things. That's not what we're disputing. That is what the statute says. Now, what we're disputing is any conclusion denied in this petition after the factual findings that they made. Anyone has any other questions? I guess not. Thank you. Thank you, Mr. Harrington. Mr. Vasquez. Good morning, Your Honor. Good morning, Council. If it pleases the Court, my name is Raspis Vasquez, and I'm here on behalf of the Plainfield School District 202. I understand my co-appellee decided he wasn't going to appear and provide oral argument and only stand in his briefs, but I'm here to represent the Plainfield School District 202. Let me begin by stating that I disagree with the appellants. When they took the position saying that the district, that the regional board agreed that they've proven everything, the record reflects otherwise. There were seven votes that they've taken, two of which that the appellants have decided to rely upon since it favored them, and they somehow want to convince this court to disagree, to disregard previous case law precedent and the Illinois statute as well as to what should be considered in granting or denying a detachment petition. There are a number of factors that are to be considered. It is not, and the appellants only have raised the benefit-detriment test, but they totally have not even addressed the community of interest, which is also part of the factor, or one of the other factors that the courts have looked upon. In and of itself, that should be sufficient to demonstrate what the petitioners have failed to do at the regional board level was to show, because it is their burden of proof, to show that they met all the factors, not just the two that they happen to be successful in proving before the regional board. Well, they proved more than that. They had the sufficiency of signatures, number one. They had sufficient evidence to support the petition, four to one in favor, which is number six. So they have one, two, three, and six. Four and five are against. And you talk about the community of interest, another factor. I don't see that in the findings. And, Your Honor, let me address that issue. Also, one of the other findings that the regional board found was that the petitioners failed to show that District 202 was not contiguous, and I think you raised that earlier. So that was in our favor. But what the cases have shown, and part of the benefit-detriment test, is one of the issues is whether the differences between or what were the differences between the school facilities and curricula. The regional board had not made a finding on that issue or have not even shown that the petitioners or that they held that the petitioners met that favorable or a favorable finding in that respect. In fact, the record would show that the regional board, the report that they received from the Regional Office of Education, which is a statutory report required to be submitted, that showed that the educational curricula of the school facilities were similar, if not almost the same. And the courts have held that particularly when that seems to be the case, then no longer the educational benefit test really comes into play because in terms of education, if they're both equal, then that no longer is an issue. And that was in the report. In addition, I know that the Epelons have currently mentioned, even today, test scores. Well, once in the courts have held that once when there's an educational benefit that's similar, then the test scores are meaningless. In addition to that, the courts have looked, and when they consider test scores, they also require the regional boards to look behind the test scores, look at the diversity issues, the socioeconomic issues regarding the students to determine the value of those test scores. That was not done here. That was not done. The other thing, the distance between, another factor, the distances between the petitioners' homes and the respective schools, there was no finding from the regional board that the petitioners have shown that the distances are shorter or more favorable if the petition was granted. You're saying the regional office did its report, but its report did not favor the annexation? No. Or they didn't do the report? No. The regional report stated that the educational comparisons of the educational programs and facilities were the same, from the school districts that were being annexed away from, I'm sorry, to the school districts that were being detached from, to the school districts that were being annexed from. So basically, both school districts on both sides had similar school facilities and similar curricula, both good. And what you are saying is that the case law indicates that when there is no difference between curriculum and when they say they're the same, then the benefit detriment test is no longer a valid reason for bringing the petition? I just want to be clear that that's... Okay. Let me clarify that when the comparisons of the school facilities, the educational school facilities and the programs, the curricula, are the same, then that dismisses or that puts away the issue of the educational benefits itself. Not the benefit detriment test, but the educational benefits comparison. That's the difference. It simply neutralizes that as an issue? That is correct, yeah. And remember, it neutralizes the issue, but it also then goes against the petitioners because they needed to show that the educational benefits outweigh in favor of granting the petition, and they failed to do that. Again, going back to another factor is the distances between the respective, the distances between the petitioner's homes to the current schools that they are attending within the school boundaries versus the schools that they want to go to. There was no finding from the regional board that they proved that the distances were more beneficial if the petition was granted or not. I wanted to address, because one of the other factors is the loss of revenue and how it affects the district. Even though I understand that the regional board made a finding that there was no substantial detriment to the school district, Plainfield School District 202. However, what the petitioners failed to show is the other factor that's listed in the case law under the benefit detriment test is the impact that proposed boundary change will have on the school recognition. In our brief, we demonstrated and the record showed that District 202 was under a deficit reduction plan. That, I think the appellants missed the point with that one. We were not, our argument in addressing that is that the state now is supervising School District 202, Plainfield. It is requiring, and the record, the school district had to reduce $6 million from its budget. The state is overseeing the school district, Plainfield School District, and mandating that it reduce its expenses in order to stay within financially sound budgeting practices. If it fails to adhere to that deficit plan, then the state can withdraw both financial recognition, which would mean that the school district would not be receiving or could be sanctioned in terms of any of the revenues it receives from the state, as well as, obviously, it can affect their academic standing as well. And that is what was important about the deficit budget reduction plan. It does have an impact and can have an impact in the district, whereas a negative impact on Plainfield School District 202, whereas the annexing district 204 did not have a deficit reduction plan. So, therefore, there would be no negative impact or wouldn't impact 204, but it would negatively impact the Plainfield School District 202. And all of this was presented at the hearing, correct? Correct, and it was not rebutted by the petitioners. But yet in the findings, and I guess this is where I really have some trouble with the findings being that they are. I mean, there's a portion about substantial detriment. The vote is 5-0 against your plan. I mean, that's the evidence on which they make these findings, and you're saying that the plaintiff is ignoring those, but it appears that based on these findings, I don't see how they weren't. I mean, they were either considered or ignored when this vote was taken. I mean, do you say that they can make whatever findings they want in writing and then vote however they want with no explanation, because they have the, without the correct findings, I guess, explanation isn't the right word to use. Without making any findings, they can then vote against the findings that they've made? Well, Your Honor, I think what I can submit to this court is that they made a couple of the findings in favor of the petitioners, and the other findings they didn't make. And what's key to note is finding number six was the fact that they failed to meet or present sufficient evidence to support the petition. If you read the rest of the, as the epilogues raised in the benefit-detriment test, one of the other factors, Your Honor, that I wanted to clarify, and I apologize. When the regional board held that there was no substantial detriment to the district, it was referring to the loss of revenue. The school district was losing or going to lose $197,000 on an annual basis. And that's one of the criteria. One of the criteria that the courts have looked at is whether there would be loss of tax revenues to the district. That is what was addressed by the regional board. And they held in favor of the petitioners, even though we disagree with that because of the loss. But one of the other factors that I was addressing with the deficit budget plan is the negative impact of the school recognition that would hurt the Plainfield School District 202. Now, Your Honor, there were some of these other factors that were not addressed and sufficiently supported by the petitioners. So the regional board just, I guess, they just said, hey, you didn't have sufficient evidence to support your petition. We are denying the petition, Your Honor. And what seems to be somewhat confusing is the fact that this is a seven-member board. Obviously, with seven members, two of which weren't there but five were, they might have differences of opinion. And that's what ended up being. So the issue is, again, if you put it as the statutory obligation is to have the burden on the petitioners to show that they have met all these tests and factors that would warrant the granting of a petition. And if the board members are not in unison or at least a majority as required by the statute, they require four to pass a measure. If they don't have a majority of it, that means, obviously, they didn't prove their case. I think, if I'm wrong, just as Ryan is talking about, these first votes were 5-0. And then they began to break up. Those are the votes, that is, that was my impression as well, that seemed to be the catch-all of is there sufficient evidence. And, Your Honor, what I'm saying, I'm sorry, maybe, please. I'm sorry. I didn't mean to cut you off. I thought you were saying something. No, no, no. Oh, okay. The two votes, the two factors that the appellants or the petitioners are reliant upon are just two, are two decisions. Finally, if you look, and I would submit to this Court, the Courts have looked at a number of other factors besides the two that the petitioners are reliant upon, and it's spelled out. Well, both, and partially even the appellants have agreed under the benefit-detriment test, there are those factors to be considered, two of which that they're reliant upon are in that benefit-detriment test. And so they are just saying that out of those factors that are listed in the case law, we have two, that's sufficient to grant the petition. They have not submitted any case that would automatically, that a court has held, that if you have the two factors that they are reliant upon and are asking this Court to rely upon to automatically grant the detachment petition, it doesn't exist. And in fact, the courts have looked at the other factors as well in determining whether a detachment petition should be granted or not. I think you had a question here. Okay. And therefore, Your Honor, then, I would just simply ask this Court that it would just affirm the denial of the petition, and thank you very much. Thank you, Mr. Beskus. Mr. Harrington, any rebuttal? It's important to remember the Regional Board heard all the evidence in this case. It heard the evidence from the residents, testimony from the residents. It had evidence of the financial impact or economic hardship, as well as the educational benefit. The benefit-desk-driven test has five different elements that are considered. The whole child and community of interest factors are additional on top of that. So we have about ten total factors that the Regional Board considered. What it then did after hearing those facts and making their factual determinations, and remember, when we're here, the factual determinations of the Regional Board are prima facie true and correct. It then, looking at Section 7-6i of the school code, made two factual conclusions after analyzing the ten factors in the benefit detriment, the whole child, and the community of interest test. All of those were considered, and they're now to be determined true and correct at this level. From that, they entered their unanimous findings that it was in the best interest of the children and their unanimous finding that there would be no substantial detriment to the losing district. They considered all those and then distilled it down to those two. And those two decisions, the counsel is correct, there isn't a case that says, if you make that finding, then it's automatically granted. Well, why doesn't that case exist? Because it doesn't get appealed. When there's a 5-0 decision that all of the factors from the benefit analysis, from the whole child, from the community of interest, are unanimous, it doesn't get to this level. It stays either at the Regional Board or possibly at the trial level. That's why there's not a case that specifically says take that next step. I find it interesting the argument raised that 202 is on the deficit reduction plan. I can't correlate that with saying, well, then keeping these kids in that district is in their best interest when they're having these problems. If we remove these kids, it's $197,000. That's less than 1% of the total budget. A $6 million deficit plan, and we're worried about $200,000 and having these kids educated somewhere else. That's not in the kids' best interest to stay there. They're in the best interest of going to their neighborhood, to go to school in their neighborhood in District 204. And also, the applicant is arguing the facts now. Remember, our facts are all prima facie true and correct here. They didn't file a complaint for administrative review contesting the factual conclusions that the Board made. Only the Committee of 10 did. They can't now come in here and say, well, those facts are wrong. They were wrong to make that decision because they didn't file a complaint for administrative review or even a cross-complaint at the trial level. They didn't file anything at this level contesting those facts. The factual conclusions that they reached after analyzing all the factors are that detaching from Plainfield 202 and annexing District 204, Naperville, where these people live, is the appropriate remedy in this case. The committee established everything they had to. All of the factors were met. The regional board agreed and then made the erroneous decision, which was against the manifest wit of the evidence, to deny the petition. So the committee prays that this court reverse and vacate the trial court's order, that it reverse the regional board's order, and grant their petition, detaching them from Plainfield 202 and annexing them into District 204. Mr. Justice, do you have any other questions? Yeah, I guess not. Thank you. We pray for your relief. Thank you, Mr. Harrington, and thank you both for your argument today. We'll take this matter under advisement and get back to you with a written disposition within a short time.